374

## In re GREENSTREET.

### Patent Appeal No. 3723.

Court of Customs and Patent Appeals.
Jan. 25, 1937.

See, also, 80 F.(2d) 63.

E. F. Wenderoth, of Washington, D. C. (John E. Lind, of Washington, D. C., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

On April 21, 1931, the appellant filed an application in the United States Patent Office for a patent on certain alleged "new and useful improvements in process for the production of volatilisable products from coal or coal and oil and for the production of gas by heat treatment of carbonaceous material." The Primary Examiner finally rejected claims 22 to 25, inclusive, all the claims in the application. These were rejected on the following references: Plauson et al., British 182,852, July 5, 1922; Owens 1,861,355, filed June 4, 1932.

The Examiner was of the opinion that all of the rejected claims read fully on the reference Plauson et al., "except perhaps for the proportioning of the oil to coal," and that the rejected claims did not involve invention over the reference Owens.

On appeal, the Board of Appeals affirmed the decision of the Examiner.

The application of the appellant, as originally filed, contained no drawings, but a drawing was afterward filed with an amendment and was refused entry. All of the rejected claims are for a process.

Appellant's process is substantially as follows:

Finely powdered coal is run through a relatively small pipe, heated to a high temperature and in the presence of steam, either at or above atmospheric pressure, so that, when the products of the treatment emerge from the exit of the pipe, the temperature registers approximately 1300° F. The steam which is admitted to the pipe with the carbonaceous material not only acts as a carrier for this material, but also combines with the volatilised products of the coal. Another feature of the alleged invention is to pass through the coil or pipe not only the finely divided coal or coke with the steam, but also petroleum hydrocarbons heavier than gasoline, the appellant alleging that, as a result, the petroleum hydrocarbons become cracked and travel along with the other products.

The specification provides that, as a result of this running of united products through the small pipe heated to a high temperature, either at atmospheric pressure or above the same, "there is almost an instantaneous conversion of the coal particles and the petroleum hydrocarbons first into the products of low temperature coal distillation and cracked petroleum products and then, on further higher or continued heating, there is a cracking of the tars and a further cracking of the hydro-carbons into lighter fractions and benzols and finally on still higher further heating there is a conversion into gas, and the process can be controlled to give any one of the above results."

The pipe used in the process is preferably a 2-inch pipe, approximately 500 feet in length, arranged in a flat coil with "U" return bends, the quantity of the materials produced being dependent upon the quality and quantity of the materials put through the coil and the speed of flow. It is suggested that the system can be used with catalyzers or not, and the specification also provides that the heated gases from the process can be led to a separating tower and used with proper condensers to obtain the desired liquid product.

The reference patent to Owens refers to the refining of coal in a finely pulverized state, of crude oil, and to the cracking of heavy distillate into lighter, more volatile elements and provides that these processes may be carried on separately, or two or more of said operations may be carried on simultaneously within the same system. The patentee specifies that powdered coal, steam, and oil may be introduced or fed into the system at the same time, conducted through a heater consisting of a series of tubes, and thence into various condensers where condensate of various kinds may be removed as the material operated upon progresses through the system. A part of the specification of the patent is as follows:

"* * * As stated under item c, this is one object of our invention, i. e. to blend the benzol of the coal with the light vapor from the oil, as part of the manufacturing process. When the apparatus is thus used pulverized coal is fed through pipe 4 and atomized by steam from pipe 7 and oil is fed to the nozzle 10 leading into the bottom of the condenser B, the volatile matter from the coal—benzol—blending with the light volatile matter from the oil, while the ash, coke and heavy fractions of the oil are precipitated, together with the tar, to the bottom of the condenser B and thence pumped to storage as residue while the commingled, light vapors are conveyed, by the continued action of the vacuum, through pipe 14 into condenser C as stated above."

The patent also provides for the feeding and commingling of steam, oil, vapor, or gas and powdered coal, and their treatment with varying degrees of heat and length of heat exposure as a means of fractioning and recovering the by-products of the coal as is desired. The various materials which are being operated upon are led into the system through a nozzle and venturi. The process is sufficiently described by claim 1 of the patent, which is as follows:

"1. The hereindescribed process comprising supplying steam and finely divided coal to commingle in advance of a heating zone, inducing flow of said steam by suction applied in rear of said heating zone and acting through said heating zone to convey the steam with the finely divided coal in suspension through said heating zone to be acted on by the heat therein, supplying oil to the hot vapors leaving the heating zone and inducing atomization and flow of said oil by said hot vapors and recovering the desired product, substantially as described."

The British patent to Plauson et al. is a process for treating carbonaceous material, such as coal, lignite, or peat, by treating the finely divided product, together with water or steam and oil, such as tar oil, in a heating apparatus under pressure, so as to produce hydrogen and certain liquid hydrocarbon compounds. The process is carried on in a temperature in the reaction pipe of from 400° to 550° C., although the patent provides for the use of temperatures as high as 700° C. The passage of the products through the apparatus is slow. The resulting product from, for example, a combination of powdered lignite, light tar oil and caustic soda solution, which is added as a catalyst, together with hydrogen, is a low boiling hydrocarbon. The patent provides that "Benzene and its homologues or petroleum or the like can be used as diluents instead of tar oils." The process of Plauson et al. can be carried on at various degrees of pressure according to the desired result.

The rejected claims are typified by claim 22, which is as follows: "22. The treatment of finely divided coal consisting in traversing the same without high pressure through a long narrow tubular passage maintained in a heated condition with an exit temperature of from about 1000° F. to 1300° F. in intimate admixture with about an equal quantity by weight of petroleum hydrocarbon of a grade having volatile constituents with a wide distilling range coinciding at least in substantial part with the volatiles in the coal, whereby a condensible hydrocarbon product free from pitches, tars, etc., and suitable for cracking is obtained."

The appellant insists that his process is carried on without destructive distillation and that therein he differs from the references. As regards the comparatively high pressure described in the British patent to Plauson et al., the Board of Appeals is of the opinion that this would have a tendency to suppress destructive distillation and be "even more beneficial and more advanced along this line than applicant's method." However, the Board of Appeals emphasizes the point that the appellant, in his application, does not emphasize any particular temperature or pressure as being critical, and that, therefore, his process does not appear to be different in char-

acter from those shown by Plauson et al. On an examination of the rejected claims, it is observed that this is true. The exit temperature, for instance, which is the only one specifically stated, ranges from 1000° F. to 1300° F. The only limitation as to pressure is that the process is carried on "without high pressure." We have seen that the reference patents disclose the carrying on of their process at varying pressures according to the result desired. In addition, it is pointed out by the Board of Appeals that appellant's process may be carried on at an atmospheric pressure up to 100 pounds per square inch, and also that any pressure may be used.

This leaves for consideration only two matters: First, the statement by appellant that his finely divided coal is mixed "with about an equal quantity by weight of petroleum hydrocarbon," and also the further statement that the petroleum hydrocarbon must be "of a grade having volatile constituents with a wide distilling range coinciding at least in substantial part with the volatiles in the coal." As to this feature, the Board of Appeals remarks that the "Proportions of coal, water and oil are not critical."

The Examiner remarks, as to this point: "It is to be noted that in the original specification (page 5 lines 17 to 25), the proportions of coal to oil are stated as being variable with factors of speed of flow, quantity through put, and products desired. The specification does not indicate that there is anything critical about equal amounts of coal and oil, nor that the oil used as the coal carrier is of any type necessarily different from well known cracking stocks, e. g. oil heavier than gasoline. * * *"

The brief for appellant argues at great length that these limitations in the claims distinguish his claims from the prior art and that therefore the Board of Appeals erred in refusing to allow these claims, in view of said limitations. However, upon mature consideration, it appears to the court that the appellant has not established the critical character of these limitations. As we have observed, the prior art, as disclosed by Plauson et al. and Owens, shows the use of the essential elements; namely, coal, steam, and petroleum oil. These reference patents cover the whole range of such materials in any desired proportion to each other at varying pressures; thus either of these reference patents would generally cover a process in which equal quantities of powdered coal and petroleum oil were used. If the appellant were granted a patent, he would obtain a patent for a process which either of the reference patentees might, under his patent, properly use. If, however, the appellant here should disclose wherein he, by using an approximately equal amount of oil and coal, or by using oil which had the same volatisable range as his coal, would produce a result by reason of the use of that particular proportion or quantity of oil, which was unexpected and useful because of such proportions or quality, then the appellant might claim that such proportions or quality were critical, and constituted a patentable invention. However, no such disclosure is made and, therefore, to grant him a patent upon such a showing is to enter a field occupied by the patentees.

For the reasons above stated, we are of opinion the Board of Appeals was not in error, and its decision is affirmed.

Affirmed.